IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| IN THE MATTER OF THE SEARCH OF: | |
|---|---|
| 1) a Samsung Galaxy S4 cellular telephone with serial number R31D801LT9X;<br>2) a Sierra Wireless cellular device with IMEI number 012701002817111;<br>3) a Huawei Tracfone cellular telephone with serial number C9F7NB9351400346;<br>4) a HTC cellular telephone with serial number HT0AFHJ03268;<br>5) a Samsung tablet computer with serial number R31D705DC8X;<br>6) a Lenovo Thinkpad laptop computer with serial number L3-A5537;<br>7) an Alienware laptop computer with Army CID evidence marking "2049/10JAN14/HSR";<br>8) a HP laptop computer with serial number 3CX0502HW9;<br>9) a Transcend Store Jet hard drive with serial number A927000777;<br>10) a Transcend Store Jet hard drive with serial number 4735754424;<br>11) a DataStick Sport flash drive with Army CID evidence marking "2048 10JAN14";<br>12) a Sandisk flash drive with serial number BN130423463B;<br>13) a Sandisk Cruzer Blade flash drive with serial number B1130324085B;<br>14) a Plantronics micro drive with serial number 003WWA100911;<br>15) a Logitech micro drive with serial number LZ319BS-DJ;<br>16) a Logitech micro drive with serial number LZ213AX-DJ<br><br>CURRENTLY LOCATED AT<br>DEA Fairbanks Office, 101 12th Ave., Room 330, Fairbanks, Alaska | Case No. 4:14-mj-00001-SAO |

1

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH

I, Wendy Chang, being first duly sworn upon oath, deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—16 electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

3. I am currently employed as a Special Agent of the Drug Enforcement Administration ("DEA") and have been so employed since July 2004. I am currently assigned to the Fairbanks Post of Duty, Anchorage District Office, Alaska. I have personally participated in numerous investigations involving illegal drug and money laundering, and I also have reviewed reports of investigations concerning these offenses, which were prepared by Special Agents of the DEA and other law enforcement agencies.

4. I have specialized training and experience in the investigation of drug trafficking. I have participated in numerous drug and gang investigations as a case agent and in a subsidiary role. I have also participated in the debriefing of a significant number of defendants, informants, and witnesses who had personal knowledge regarding major drug trafficking organizations. Additionally, I have participated in many aspects of drug and gang investigations, including conducting surveillance and conducting court-ordered interceptions of wire communications. I am familiar with drug traffickers' methods of operation, including the manufacture, storage, transportation, and distribution of drug, the collection of money that represents the proceeds of drug trafficking, and money laundering. I am aware that drug traffickers often communicate

2

with their drug-trafficking associates through the use of cellular telephones and digital display paging devices. I am also familiar as to the manner in which drug traffickers transport and distribute drug in areas they control.

5.   I know that synthetic cannabinoids and synthetic cathinones, often referred to as synthetic marijuana/"spice" and "bath salts" respectively, as listed in the Synthetic Drug Abuse Prevention Act of 2012 of the Controlled Substances Act (21 U.S.C. § 812), are Schedule I controlled substances. I know that spice and bath salts are illegal and are often imported into the United States in large quantities from points located in Mexico and China, repackaged in small quantities once it is smuggled into the United States, and commonly sold to consumers through head shops and gas stations. Many synthetic drugs currently being seized by law enforcement are analogues of Schedule I and Schedule II controlled substances and are therefore also illegal as specified in 21 U.S.C. § 813.

6.   The information in this affidavit is based on my personal participation in this investigation and knowledge obtained from investigative reports, conversations with, and a review of reports generated by, state, local and federal law enforcement officials. This affidavit is intended to show that there is probable cause for the requested seizure warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.

7.   I have conducted and/or participated in investigations which have resulted in the seizure of marijuana, marijuana grow operations, cocaine hydrochloride, cocaine base (crack), PCP, heroin, methylenedioxymethamphetamine (MDMA/ecstasy), methamphetamine, synthetic drugs, prescription medications, firearms, cellular telephones, surveillance systems, cameras, memory cards, computers, documents, bulk currency, and precious metals. I have also conducted numerous interviews of people involved in the use, possession, manufacture, and trafficking of controlled substances. In addition to my formal training and experience, I have gained knowledge and insight by working and speaking with many experienced law enforcement agents from local, state, and federal agencies, and I consider this knowledge and insight to be an integral part of my experience and training.

3

8. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

9. The property to be searched is:

   a. a Samsung Galaxy S4 cellular telephone with serial number R31D801LT9X;
   b. a Sierra Wireless cellular device with IMEI number 012701002817111;
   c. a Huawei Tracfone cellular telephone with serial number C9F7NB9351400346;
   d. a HTC cellular telephone with serial number HT0AFHJ03268;
   e. a Samsung tablet computer with serial number R31D705DC8X;
   f. a Lenovo Thinkpad laptop computer with serial number L3-A5537;
   g. an Alienware laptop computer with Army CID evidence marking "2049/10JAN14/HSR";
   h. a HP laptop computer with serial number 3CX0502HW9;
   i. a Transcend Store Jet hard drive with serial number A927000777;
   j. a Transcend Store Jet hard drive with serial number 4735754424;
   k. a DataStick Sport flash drive with Army CID evidence marking "2048 10JAN14";
   l. a Sandisk flash drive with serial number BN130423463B;
   m. a Sandisk Cruzer Blade flash drive with serial number B1130324085B;
   n. a Plantronics micro drive with serial number 003WWA100911;
   o. a Logitech micro drive with serial number LZ319BS-DJ;
   p. a Logitech micro drive with serial number LZ213AX-DJ,

hereinafter the "SUBJECT DEVICES." The SUBJECT DEVICES are currently located at the DEA Fairbanks Office, 101 12th Ave., Room 330, Fairbanks, Alaska.

10. The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11. In early January 2014, I was contacted by FBI SA Richard Sutherland who told me that an unidentified individual (or individuals) was selling synthetic drugs on the Internet. The seller was using the web site addresses www.lorenztheory.biz/LT and www.racetamedge.com to advertise the sale of synthetic drugs. When I viewed the website www.lorenztheory.biz/LT, I observed that the website advertised the sale of substances like 5F-PB-22, an analogue of JWH-018 (a Schedule I controlled substance); 3-MeO-PCP, a possible

4

controlled substance); 4-MEC, an analogue of methcathinone (a Schedule I controlled substance); ethylone, an analogue of methylone (a Schedule I controlled substance); and many others. I also observed an order form page on the website in which to submit an order for the controlled substances. According to SA Sutherland, the websites had an associated name of "Edward Lorenz" and a shipping address of PO Box 74235, Fairbanks, AK 99707. I later learned through the US Postal Inspection Service that the only applicant for this PO Box was Kevin K. LEE at 3208 Macarthur Rd, Ft. Wainwright, AK.

12. On or about January 8, 2014, I contacted Army Criminal Investigations Division (CID) Special Agent Andrew Fank at Ft. Wainwright, AK, and notified him of the above information on LEE. SA Fank confirmed that Kevin Kyongin LEE was currently an Army soldier stationed at Ft. Wainwright, and resided at Room 151B, Building 3207, Neely Road, Ft. Wainwright.

13. On January 10, 2014, Military Magistrate Judge LTC Jennifer A. Brewer granted CID authority to search LEE's barracks room and LEE's vehicles. At approximately 3:00 pm that day, CID agents arrested LEE for violations of the Uniform Code of Military Justice (UCMJ) at Ft. Wainwright. During a post-arrest interview, LEE waived his Miranda Rights and told me that he was "Edward Lorenz" and chose the alias after a famous mathematician who helped develop Chaos Theory. LEE stated that he had been selling synthetic drugs on the Internet since July 2013 because he needed the money and had previously researched the drugs and the drug suppliers also via the Internet. LEE estimated that he had sold approximately 10 kilograms of synthetic drugs and made approximately $100,000 US currency in drug proceeds over the six-month period he sold drugs online. LEE said he acted as a middleman between larger synthetic drug distributors and his drug customers. Specifically, LEE stated that he sold four kilograms of 5F-PB-22 for approximately $9,000 US currency to a drug customer in Texas. As mentioned above, 5F-PB-22 is an analogue of the Schedule I controlled substance JWH-018. Additionally, based on my training and experience, I know 5F-PB-22 is commonly used in the manufacturing of spice.

5

14.     LEE also told me that he was in possession of synthetic drugs and they could be found in a blue Tommy Hilfiger bag in his room. During a search of LEE's barracks room that same day, CID agents seized approximately 252 grams of assorted chemicals packaged in ziplock bags and packets, some of which was in a blue Tommy Hilfiger bag, hidden in a fake shaving cream can with a false bottom. Some of the powders in the ziplock bags were labeled as "6-APB" and "3-MeO-PCP". Based on my training and experience, I know that 6-ABP is an analogue of MDA, a Schedule I controlled substance, and 3-MeO-PCP is a possible analogue of PCP, a Schedule II controlled substance. CID agents also seized THE SUBJECT DEVICES, along with digital scales, packaging material, and financial documents.

15.     On January 14, 2014, CID agents transferred custody of the drug and non-drug evidence seized from LEE, including the SUBJECT DEVICES, to DEA agents at the DEA office in Fairbanks, AK. The drug evidence is currently at DEA's Western Laboratory for analysis and the results are pending. Based on my training and experience and knowledge of this investigation, I believe that some or all of the drugs seized from LEE on 01-10-14 will contain either a scheduled controlled substance or an analogue of a scheduled controlled substance.

16.     In my training and experience, I know that the SUBJECT DEVICES have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT DEVICES first came into the possession of the DEA.

## TECHNICAL TERMS

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

6

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

c. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address

7

so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

d. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

e. Computer hardware: Computer hardware consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

18. Based on my training, experience, and research, and from consulting the manufacturers' advertisements and product technical specifications available online at websites

8

for the various manufacturers of the SUBJECT DEVICES, I know that the SUBJECT DEVICES have the capabilities that allow them to serve as either a wireless telephone, tablet, or computer hardware. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the SUBJECT DEVICES. This information can sometimes be recovered with forensics tools.

20. There is probable cause to believe that things that were once stored on the SUBJECT DEVICES may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system

9

configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers and e-mail programs store configuration information on the storage medium that can reveal information such as online nicknames (aliases) and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, registry information, configuration

10

files, user profiles, e-mail, e-mail address books, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the computer or storage medium during the relevant time period.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how the computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing a user's intent.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

11

many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICES described in Attachment A to seek the items described in Attachment B.

Dated at Fairbanks, Alaska, this 21st day of January, 2014.

Redacted Signature

Wendy Chang

Special Agent

Drug Enforcement Administration

SUBSCRIBED and SWORN before me this 21st day of January, 2014 in Fairbanks, Alaska.

Redacted Signature

United States Magistrate Judge

12